# Slayton v. Blount.

### Statutory Action in nature of Ejectment.

1. *Conveyance to "Mary F. B. and the heirs of her body."*—Under a conveyance of land prepared from a printed form, the blanks being filled by a person evidently unskilled, between J. P. T. of the first part, and "*Mary F. B. and the heirs of her body* of the second part," the granting clause being to "the said party of the second part, and to *his heirs* and assigns forever," with *habendum* clause "to said party of the second part, *his heirs* and assigns, to the only proper use and benefit of said party of the second part, *her heirs* and assigns forever," and covenants of warranty to "said Mary F. B. and the *heirs of her body* and assigns ;" no interest or estate whatever is vested in the children of Mary F. B. living at the time, but an estate-tail is created in her, which is converted by the statute (Code, § 1825) into an absolute estate in fee simple.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. S. H. SPROTT.

This was a statutory action in the nature of ejectment, brought by M. P. Blount against Luther Slayton, to recover an undivided interest in a certain tract of land, which the plaintiff claimed under a conveyance from one J. P. Thompson to Mrs. Mary Francis Blount, who was plaintiff's mother, and which the defendant claimed as a purchaser from one Sumner, who held under a deed subsequently excuted to him by said Thompson and wife and Mrs. Mary F. Blount and her husband. The rulings of the court below were in favor of the plaintiff, and these rulings are here assigned as error.

F. S. MOODY, and FOSTER & JONES, for appellant.

CARL GANTHZOR, and WOOD & WOOD, *contra*.

WALKER, J.—A printed blank form was used in the execution of the deed upon the construction of which depends appellee's right of recovery. In copying the parts of the instrument which have a bearing upon the question of construction, the written words are italicized, so as to distinguish them from the printed matter. The deed commences and proceeds as follows : "This indenture, made the *26* day *February*, in the year of our Lord one thousand eight hundred and *sixty-seven*, between *J. P. Thompson* of the first part, and *Mary*

[Slayton v. Blount.]

*Francis Blount and the heirs of her body* of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of *six hundred* dollars to *him* in hand paid, at and before the sealing and delivery of these presents by the party of the second part, the receipt whereof is hereby acknowledged, hath granted, bargained, sold and conveyed, and do by these presents grant, bargain, sell and convey unto the said party of the second part, and to *his* heirs and assigns forever." Here follows the description of the land. The instrument then proceeds: "To have and to hold to the said party of the second part, *his* heirs and assigns, to the whole and only proper use, benefit and behoof of the said party of the second part, *her* heirs and assigns forever. And the said party of the first part, for *his* heirs, executors and administrators, do hereby warrant and will forever defend the title of the above bargained premises to *Mary F. Blount and the heirs of her body* and assigns, free from the claim or claims of all and every person or persons whomsoever, as also the claim of the General Government." The deed concludes and is signed and acknowledged in the usual form.

Said Mary Francis Blount was alive at the date of the execution of said deed, and at that time she had four living children. In 1872 said J. P. Thompson and his wife, and said Mary Francis Blount and her husband, executed to one Sumner a deed to the same land described in the above mentioned conveyance of said Thompson. Appellant regularly derives title from said Sumner, through several mesne conveyances. Appellee is one of said four children of said Mary Francis Blount. Two of the four have since died. Appellee contends that the effect of the above described deed of said J. P. Thompson was to vest an undivided one-fifth interest in said property in said Mary Francis Blount, and in each of her four living children, and that said Mary Francis having conveyed her interest by the deed to Sumner, and two of said children having since died, appellee is entitled to two-fifths interest in said property, one fifth in his own right as grantee in said deed from Thompson, and one fifth as joint heir with his living brother of the two deceased children. Appellee was sustained in this contention by the rulings of the Circuit Court.

The words *heirs of the body*, in their natural and ordinary signification, are words of limitation and not of purchase. At common law, they were the appropriate words to be used for the creation of an estate-tail. They acquired a definite technical meaning. This meaning must be accorded to them, unless there is something in the instrument to show that they were used in a different sense. When it appears from the

[Slayton v. Blount.]

context that the word *heirs*, or *heirs of the body*, are intended to have a broader or more popular meaning than is accorded to them in technical usage, courts will lay hold of any expressions in the instrument indicative of such intention, and will give to the words the meaning which it appears they were intended to convey. Thus, where the phrases *heirs of the body* and *children* are used as synonymous, and it is clear that the technical phrase is not used for the purpose of limitation, but as a description of a class of persons, the ascertained intention of the maker of the instrument will prevail, the two phrases will be held to mean the same thing, and the words *heirs of the body* will be given effect as words of purchase. *May v. Ritchie*, 65 Ala. 602; *Darden v. Burns*, 6 Ala. 362; *Robertson v. Johnston*, 36 Ala. 197; *Williams v. McConnico*, 36 Ala. 22; *Wllliams v. Graves*, 17 Ala. 621. It is not permissible, however, to disregard the established technical meaning of words, in the absence of any thing in the instrument to show that the grantor or devisor intended to use them in a different sense. Such intention must be disclosed by the instrument.

In the above described deed of J. P. Thompson, the contention that the words "the *heirs of her body*" were intended to describe the living children of Mary Francis Blount is supported only by the fact that those words appear in the premises where the parties to the instrument are named. Throughout the subsequent portions of the deed, the language is appropriate to vest title in Mary Francis Blount alone. The pronouns used in referring to the grantee are in the singular, and not in the plural number; and where the phrase *heirs of her body* is inserted in the blank in the printed *habendum* clause, the printed word *heirs* which immediately follows was stricken out by running the pen through it, so as to leave the words *heirs of her body* in place of the word *heirs*. This circumstance indicates that the words *heirs of her body* were chosen as the words to be used for the purpose of limitation, instead of the word *heirs* ordinarily found in this part of the deed to answer that purpose. No reference whatever is made in the instrument to the children of Mary Francis Blount. We find no expression to justify the conclusion that the grantor intended the children to be grantees under the instrument. The deed bears upon its face evidence of having been drawn by an unskilled person. The mode in which the words *heirs of her body* are used is well calculated to convey the impression that the draughtsman had a vague notion of the necessity of using some such technical expression to pass a good title, and that such phrase should be used wherever the

grantee was named. This explanation of the unnecessary use of the words in the premises seems at least more plausible than the suggestion that they were used to describe four persons who are not otherwise referred to in an instrument, all the other expressions of which point to a sole grantee.

There is a further consideration in support of the conclusion that the words *heirs of her body*, as used in the deed, can have effect only as words of limitation. Standing by themselves, they are wanting in the element of certainty, which is essential in order to treat them as words of purchase. There is a familiar Latin maxim, the meaning of which may as well be expressed in English, to the effect that no one is the heir of a living person. At the date of the execution of the instrument there were no persons living who could take under the description as heirs of the body of Mary Francis Blount, for she was living at that time, and for many years thereafter. There is nothing to justify such a limitation of the phrase *heirs of her body* as to make it include only children living at the date of the deed; for, if it is to be given effect at all as a description of a class of persons, after-born children and remoter descendants would be included as well. Said Mary Francis did have several other children, who were born after the date of said deed. It is plain that they could not claim as grantees, though they are as much within the alleged words of description as are the elder children. Even if we could assume that it was the intention of the grantor to use the words as words of purchase, still, the description being of an unascertainable class of persons, would be altogether uncertain, and there is nothing in the deed to clear away the uncertainty. It has often been held that a grant of land to the heirs of a living person is void.—*Hall v. Leonard,* 1 Pick. 27; *Morris v. Stephens,* 46 Pa. St. 200; *Winslow v. Winslow,* 52 Ind. 8. A deed made to the heirs of the body of a deceased person is good, because the words describe the persons in existence who can be definitely ascertained.—*Jones v. Morris,* 61 Ala. 518. Unless the person named as ancestor is deceased at the date of the conveyance, or unless there are other expressions in the instrument descriptive of the persons intended to be named as grantees, the words *heirs of the body* are too indefinite and uncertain to be operative as words of purchase. The conclusion is, that the effect of said deed of J. P. Thompson was to vest in Mary Francis Blount a fee-tail estate, which by operation of the statute became an estate in fee simple.—Code of 1886, § 1825; *Smith v. Greer,* 88 Ala. 414. No title passed by the deed to appellee, or to any of the children of Mary Francis Blount. The general affirmative charge requested by the appellant should have been given.

Reversed and remanded.