# Sullivan *et al. v.* McLaughlin *et al.*

*Bill in Equity to Set Aside Sale Under a Mortgage.*

1. *Construction of deed.*—In the construction of a deed, the controlling inquiry is the intention of the grantor, and in ascertaining such intent the deed is to be interpreted as a whole, and the subject matter and the surrounding circumstances are to be considered; and if the deed bears on its face evidence that it was drawn up by an unskilled draughtsman, unacquainted with the technical meaning and force of the terms used, greater latitude of construction must be indulged than in cases where the instrument appears to be skillfully drawn.

2. *When "heirs of her body" are terms of purchase.*—In a deed of gift from a husband, in which he conveys to his wife "and the heirs of her body by myself as husband," especially excluding in said deed all rights of inheritance or other rights of the heirs of the wife by any other person, and when there were living children of the grantor by his said wife at the time of the conveyance, the terms used must be construed, not as words of limitation and inheritance, but as descriptive of a class of persons to take under the deed as purchasers; and the estate so created in the wife is not an estate tail.

3. *Estoppel.*—When the respondent to a bill to set aside a sale under a mortgage claims title to and through a purchaser at the mortgage sale, the mortgage having been executed by the grantor of the complainant, he is estopped from denying that the mortgagor had title to the land, he being the common source of title to both parties.

4. *When a sale under mortgage premature.*—The recitals in a mortgage that it was given to secure an indebtedness evidenced by "two promissory notes, . . payable as described in a conveyance of the date" of the execution of the mortgage, and that it was given to secure "the true and prompt payment of the same" by a certain day mentioned in the mortgage, in the absence of the conveyance referred to and of facts showing that one of the notes fell due prior to the date named in the mortgage, will be construed to mean that if the mortgage debt, or any part thereof, remained unpaid after the day named in the mortgage, the mortgagee would have the right to sell under the power; and a sale prior to that date is premature.

APPEAL from the Chancery Court of St. Clair.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed March 8, 1890, by the appellants against the appellees. It appears from the allegations of the bill, that on March 8, 1880, Wesley Goodwin, being seized and possessed of certain lands described in the bill, executed together with his wife, Melissa D. Goodwin, to James McLaughlin, and W. S. Forman, as administrators of the estate of James Forman, deceased, a mortgage deed

for $1,000 to secure the payment of the purchase-money for said land, said mortgage debt, as recited therein, being due and payable October 1st, 1882; that in 1880 or 1881, Wesley Goodwin paid on said mortgage debt $90; that afterwards, on January 5th, 1881, the said Wesley Goodwin executed a deed of conveyance to said land, the granting clause in said deed being as follows: "I, Wesley Goodwin, for the love and affection I have for my wife Melissa D. Goodwin, as well as for other good and valuable consideration, do hereby give, grant, enfeoff and convey to the said Melissa D. Goodwin and the heirs of her body by myself as husband," certain described land. The *habendum* clause of said deed is set out in the opinion. The bill further alleges that in May, 1881, the said Wesley Goodwin died intestate, leaving surviving him his wife, Melissa D. Goodwin, and the following children by his said wife: Nelson Goodwin, Talley Goodwin, Leander Goodwin and Laura Keith, which children were in being at the time the said deed was executed by Wesley Goodwin, on January 5th, 1881; and that they are the only children Wesley Goodwin had by his wife, Melissa Goodwin; and the bill avers that the said Melissa Goodwin and the said children are the grantees in said deed. The bill further avers that in December, 1881, while Melissa Goodwin and her children were in the possession of the said land, the said McLaughlin and W. S. Forman, as mortgagees aforesaid, demanded, and took from her the possession of the land; that they went into possession thereof; and that in January, 1882, the said James McLaughlin and W. S. Forman proceeded to advertise the said land for sale as provided in their said mortgage, and on February 3, 1882, they sold the said land under the power of sale contained in the mortgage for $1,705, which sum was paid by John Keith, and a deed executed to him by the said mortgagees. It is further averred that said John Keith went into possession of said land, and continued in possession thereof until February, 1887, when he sold the same to T. T. Scott, who went into immediate possession, and has been in possession thereof ever since. The said Melissa D. Goodwin, who is now Melissa D. Sullivan, and the above mentioned children of her and the said Wesley Goodwin, deceased, are the complainants in the present bill; and seek to have the sale made by the administrators under the power contained in the mortgage, on February 3, 1882, set aside, and to have the rent of said premises from that time, with the interest, applied to the amount ascertained to be due upon the mortgage debt, and, upon the payment by complainants of any other amount

which may be found to be due thereon, to have said mortgage cancelled and removed as a cloud upon complainants' title. The said administrators, and the heirs at law of James Forman, deceased, and the said John Keith, and T. T. Scott are made parties defendant. All of the defendants except T. T. Scott joined in a demurrer to the bill as amended, and assigned as cause thereof the following grounds: 1st, that complainants have a plain and adequate remedy at law; 2d, that there is no equity in the bill, because the complainants show therein that the lands in controversy were sold by the administrators under a power of sale contained in the mortgage, and that more than two years have elapsed since the said sale; 3d, that the complainants fail to show that they have any present interest or estate in the lands in controversy; 4th, the same grounds as the third; 5th, that they fail to aver or show that the defendants, James M. McLaughlin and W. S. Forman, as administrators of the estate of James Forman, deceased, or otherwise, had any lawful authority to sell the land, the subject-matter of this suit, so as to invest Wesley Goodwin, under whom complainants claim, with any title to said land; 6th, that the complainants show by their bill that the title to the land in controversy has never in any lawful or equitable way been divested out of the heirs of James Forman, deceased; 7th, that the complainants fail to aver or show when the first note mentioned in the mortgage fell due; 8th, that the bill fails to show that no default was made by Wesley Goodwin, or those claiming under him, in the payment of the first note mentioned, before the sale by the mortgagees on February 3, 1882; 9th, that the bill fails to show that there was not such default made in the payment of the mortgage debt or any part thereof, prior to February, 1882, as would authorize the mortgagees, McLaughlin and Forman, to foreclose their mortgage; 10th, the bill fails to show that the sale made by the mortgagees on February 3, 1882, was not binding and valid under the terms of the mortgage; 11th, there is a misjoinder in the parties complainant, in that said Laura E. Keith, Nelson Goodwin, Talley Goodwin and Leander Goodwin, are not proper parties complainant to the suit; 12th, because the bill does not show that the above mentioned children of Wesley and Melissa D. Goodwin are proper parties complainant to this suit; 13th, that the bill shows that the said Melissa D. Sullivan is the only proper party complainant to this suit; and 14th, there is a misjoinder of parties defendant to this suit, in this, that the children of James Forman, deceased, are not proper parties defendant. The defendant, T. T.

XCIX.

[Sullivan et al. v. McLaughlin et al.]

Scott, demurred to the bill on the following ground.: "That it appears from and by the bill that the complainants Laura E. Keith, Nelson Goodwin, Talley Goodwin and Leander Goodwin have no interest in the matter in controversy, and are improper parties to this suit."

Upon the submission of the cause on the demurrers, the chancellor decreed that the demurrer of the defendant Scott was well taken, and sustained the same. He also sustained the 5, 6, 7, 8, 9, 10, 11, 12, and 13, grounds of demurrer interposed by the other defendants, and overruled the 1, 2, 3, 4 and 14, grounds of said demurrer. This appeal is prosecuted by the complainants in the court below; and the chancellor's decree upon the demurrers is assigned as error.

M. M. SMITH, for appellant.—(1.) The respondents were estopped from denying title of Wesley Goodwin, the mortgagor.—*Pollard v. Cocke*, 19 Ala. 188; *Houston v. Farris*, 71 Ala. 570; *Tenn. & Coosa R. R. Co. v. East Ala. R. R. Co.*, 75 Ala. 516. (2) The mortgage was prematurely foreclosed. *McLean v. Presley's Admrs.*, 56 Ala. 211; *Johnson v. Buckhaults*, 77 Ala. 276. (3) There was no misjoinder of parties. *Fellows v. Tann*, 9 Ala. 999; *Powell v. Glenn*, 21 Ala. 458; *Williams v. McConico*, 36 Ala. 22; *Robertson v. Johnston*, 36 Ala. 197; *Sprague v. Tyson*, 44 Ala. 228; *May v. Richie*, 65 Ala. 602; *Powe v. McLeod*, 76 Ala. 418; *Wikle v. McGraw*, 91 Ala. 631.

W. M. BROOKS, and JOHN W. INZER, *contra*, cited *Musina v. Bartlett*, 8 Port. 277; *Ewing v. Standifur*, 18 Ala. 400; *Lloyd v. Rambo*, 35 Ala. 709; *Young v. Kinnebrew*, 36 Ala. 97; *McLean v. Presley's Admrs.*, 56 Ala. 211; *Smith v. Greer*, 88 Ala. 414; 5 Brick. Dig., p. 301, §§ 70-74.

THORINGTON, J.—The bill in this case seeks to charge mortgagees in possession with rents, which it is alleged are equal in amount to the mortgage debt, and to have the mortgage satisfied from such rents, and cancelled as a cloud on complainants' title; and there is an offer in the bill to pay any balance of the mortgage debt, if the rents should prove insufficient for that purpose.

The principal question for the decision of this court involves the construction of a deed made by Wesley Goodwin, January 11, 1881, to his wife and children, who are the complainants, and filed the bill after his death. The deed, in consideration of natural love and affection, conveys unto "the said Melissa Goodwin and the heirs of her body by

[Sullivan et al. v. McLaughlin et al.]

myself as husband the following described property," being the same set forth in the bill. The *habendum* and *tenendum* clause of the deed is as follows, to-wit: "To have and to hold to the said Melissa D. Goodwin and the heirs of her body by myself as husband, and to her assigns, in the right and for the interest of her said heirs as aforesaid, hereby specially excluding all and every right of inheritance or other rights of the heirs of Melissa D. Goodwin by any person or persons other than myself."

By an amendment to the bill it is averred that Wesley Goodwin, the grantor, was at the date of the deed in declining health; that the property conveyed constituted substantially all the property he then owned; that his wife, one of the grantees, then had living children by a former husband; that Wesley Goodwin's desire and intention in executing the deed was to provide for his wife and his own children by her; and that the words in the deed, "heirs of her body by myself as husband," were so used "to show that all other heirs and children of his said wife were excluded from taking or holding any interest in said lands under or by virtue of said deed;" that it was the grantor's intention to convey said property by said deed to his wife and children jointly, and "the draughtsman thereof inadvertently used in said deed the term *heirs of her body by him as husband,* instead of *her children by him;*" that said grantor was illiterate and unlearned in legal terms, and, not knowing the effect of the technical terms used in the deed, supposed and believed he was conveying the lands to his wife and her children by him as husband, who are complainants in the bill, and were living when the deed was made.

Demurrers to the bill, before and after the amendment thereto, were filed by respondents, on the ground of misjoinder of parties complainant, and also on other grounds that will be briefly noticed hereinafter.

The decree of the Chancery Court on the demurrers can only be sustained on the theory that the deed in question creates in Mrs. Goodwin an estate-tail, which, by the statute (Code 1886, § 1825), is converted into an absolute fee-simple estate; that her children, therefore, having no interest in the land, are improperly joined with her as complainants in the suit.

The controlling inquiry is as to the intention of the grantor. What estate and interest did he intend to create by the deed? In ascertaining such intent, the deed is to be interpreted as a whole, and the subject-matter and surrounding circumstances are to be considered. In looking to the
xcix.

whole structure of the deed, if it is found to bear on its face evidence that the draughtsman was not skilled in drawing such instrument, that he was unacquainted with the technical meaning and force of the terms used, greater latitude of construction must be indulged, than in cases where the instrument appears to have been skillfully drawn by one acquainted with the force and meaning of the technical expressions employed.

Wesley Goodwin, the grantor in this deed, had married a widow with children by a former husband; there were also children of her marriage with him, and children of each class were living at the time of the execution of the deed. The property conveyed constituted substantially all the grantor's estate; he was in failing health, was illiterate, and unacquainted with the meaning and effect of technical terms in conveyances; and in some particulars the deed is inartificially drawn. Whatever technical, legal operation and effect the language employed in the deed may have in and of itself, when subjected to the light of these surrounding or attendant circumstances, it can have but one meaning. It is obvious that the intention of the grantor was to make provision to the extent of his means, and in his life-time, for his wife and his own children by her, to the exclusion of her children by a former husband. The consideration of the deed is mutual love and affection, and, under the circumstances, this was the most natural direction and expression of the grantor's bounty; and we think the deed may be so construed as to render it effectual to carry out that purpose.

The language in the deed, "heirs of her body by myself as husband," unrestricted by any other terms of the deed; and in the absence of living children of the wife by the grantor, would create an estate-tail special at the common law, upon which our statute (Code, 1886, § 1825), would operate.—1 Wash. on Real Prop., (5 Ed.), p. 108, § 33; *May v. Ritchie*, 65 Ala. 602. But, it being evident that the word "heirs" is used as the equivalent of children, and there being living children of the grantor by his wife Melissa, at the time the deed was executed, the terms employed in the deed, and quoted above, must be construed, not as words of limitation and inheritance, but *as a description of a class of persons to take under the deed as purchasers*, and the language is sufficiently definite and certain to be operative for that purpose.—*Slayton v. Blount*, 93 Ala. 575; *Hamilton v. Pitcher*, 53 Mo. 334; 1 Devlin on Deeds, § 184. The deed, therefore, did not create an estate-tail in Mrs. Goodwin, but it vested

5

the property in her and her children by the grantor, then living; and there being nothing in the deed from which it can be inferred that the grantor intended to postpone the interest of the children, the title to the property vested in them immediately, jointly and equally with their mother; but whether subject to diminution by the subsequent birth of other children of her marriage with the grantor, we do not decide, as it is not a question in this case.— *Wikle v. McGraw*, 91 Ala. 631; *May v. Ritchie*, 65 Ala. 602; *Varner v. Young's Executor*, 56 Ala. 260; *Robertson v. Pettibone & Johnson*, 36 Ala. 197; *Vangant v. Morris*, 25 Ala. 285; *Powell v. Glenn*, 21 Ala. 459; *Mims v. Stewart*, 21 Ala. 682.

In the case of *Varner v. Young's Executor, supra,* the language of the deed construed is substantially the same as in the deed we are now considering, and there was a living child of the grantee at the time the deed was executed. The court said: "The words by which the slaves are conveyed, if employed in a conveyance of title to land, would have created an estate-tail at common law." This was intended simply as a declaration of the legal effect and operation of the words or terms then under consideration, when employed in conveyances of land generally, unrestricted or unexplained by other portions of the instrument, and without reference to whether there were or not living children of the grantee at the date of the conveyance. The case is, therefore, not to be considered as asserting a doctrine contrary to that herein announced.

It follows from what has been said that the Chancery Court erred in sustaining the several grounds of demurrer for misjoinder of parties complainant.

The fact that the deed was made directly to Mrs. Goodwin by her husband, instead of by the intervention of a third person as trustee, and that, therefore, only an equity was thereby vested in her and not the legal title, can not change the result. Whatever *residuum* of title may have continued in the husband after the execution of the deed, passed out of him by his death, and into his heirs before the bill was filed; so that the complainants, who are shown to be the only children of the grantor, and their mother, Mrs. Goodwin, represented the entire fee in the land, and were properly joined as complainants.—*Powe v. McLeod*, 76 Ala. 418.

What has been said disposes of the demurrer filed by appellee, Scott, and also the 11th, 12th and 13th grounds of the demurrer filed by the other appellees and sustained by the Chancery Court.

The fifth and sixth grounds of the last mentioned demurrer were improperly sustained, for the reason that it does not appear from the bill or the exhibits thereto that the land was sold by McLaughlin and Forman, as administrators of the estate of James Forman, deceased, or that the title to the land mortgaged was ever in James Forman. If, however, taking the bill most strongly against the pleader, the mere recital in the mortgage, that it was executed to secure the purchase-money for the land, gives rise to the presumption that the lands were sold by the administrators, instead of by their intestate in his life-time, still, all the respondents who file the demurrers have, as the bill shows, no claim or interest in the property except through Wesley Goodwin, the grantor in the deed to appellants; he, therefore, being the common source through which all the parties claim, they are estopped from denying that he had title to the lands.—*Tenn. & Coosa R. R. Co. v. East Ala. R. R. Co.,* 75 Ala. 516 ; *Houston v. Farris,* 71 Ala. 570 ; *Pollard v. Cocke,* 19 Ala. 188.

The 7th, 8th, 9th and 10th grounds of demurrer were also improperly sustained. It appears distinctly from the allegations of the bill that the entire sum secured by the mortgage became due by its express terms on the 1st day of October, 1882, for all purposes of foreclosure, and there is nothing in the exhibits to the bill to contradict or neutralize that averment. The language of the mortgage is : "Whereas we are indebted · · · in the sum of one thousand dollars in two promissory notes, five hundred dollars each, and payable as described in conveeyance of this date ; · · · · · now, therefore, to secure said James M. McLaughlin and William S. Forman in the true and prompt payment of the same on the 1st day of October, 1882," &c. And further, "but if default be made in the payment of said amount, or any part thereof, then" &c. Without intending to indicate what our ruling on this question would be, if it appeared from the allegations of the bill, or the exhibits thereto, that one of the mortgage notes fell due prior to February, 1882, when the mortgage sale was made, we are constrained to hold, in the absence of such fact, that the language quoted above simply means that, if the mortgage debt or any part thereof remained unpaid after the 1st day of October, 1882, the mortgagee should have the right to sell under the power contained in the mortgage. The conveyance referred to in the mortgage, as containing a description of the notes secured by the mortgage, is not exhibited with the bill, and in its absence it can not be assumed,

[Corey v. Wadsworth.]

in the face of the positive allegations of the bill to the contrary, that either note secured by the mortgage matured prior to the 1st. day of October, 1882. Taking the allegations of the bill to be true, as we must on demurrer, the foreclosure was premature and unauthorized.

The Chancery Court erred in its decree sustaining the grounds of demurrer, as shown by the assignments of error, and its decree is accordingly reversed and the cause remanded.

Reversed and remanded.