# Shuttle & Weaver Land & Improvement Co. v. Barker.

## *Ejectment.*

(Decided November 21, 1912.   60 South. 157.)

1. *Wills; Construction; Trust Estates.*—Where a will creates an executed trust effective without conveyance, equity will construe the limitations as it would construe similar legal limitations.

2. *Same.*—A devise to a devisee, and the heirs born of her body creates at common law a base, conditional or qualified fee, giving the whole estate to the devisee, if unaffected by any inferences of a different testamentary intent, and only limiting the line of descent to the general heirs of her body, the property vesting in her as in cases of absolute fee under section 3397, Code 1907.

3. *Same.*—Where a testator gave to his son certain described real estate in trust for his granddaughter for her sole use, and the heirs born of her body, free from any control or liability for the debts of any husband she might subsequently have, and in the event of her death, without living issue, the property should go to others, and at the time of the will and testator's death, such granddaughter was an infant and unmarried, but subsequently married, and had a child, the granddaughter acquired an absolute fee, and a grantee under a conveyance executed by her and her husband acquired title.

4. *Same; Heirs of Body.*—In a will, the words "heirs of the body" are construed as words of limitation, unless it clearly appears that they are used to designate individuals, answering the description of heirs at the death of a party, and the words will yield to a clear, particular intent that the estate shall be for life only.

5. *Same.*—The term "heirs" or "heirs of the body" used in a will may properly be interpreted as being children, but to so construe them there must be a provision in the will clearly evincing an intention to that end.

6. *Same; Intention of Parties.*—In construing a will, the courts seek to ascertain the intention of the testator by taking the language of the will in its natural sense, and by giving to technical words their technical meaning, unless the context furnishes a clear indication that they are used in a different sense.

APPEAL from Perry Circuit Court.

Heard before Hon. B. M. MILLER.

Ejectment by Maggie E. Barker against the Shuttle & Weaver Land & Improvement Company.   Judgment

[Shuttle & Weaver Land & Improvement Co. v. Barker.]

for plaintiff and defendant appeals. Reversed and re-
manded.

LAVENDER & THOMPSON, for appellant. Under the
will the grantee took an estate which became absolute
upon the birth of the child so far as to enable the gran-
tee by alienation to bar not only his own child but the
possibility of a reverter.—*Jordan v. Roach*, 32 Miss.
481; *Smith v. Dreher*, 88 Ala. 418; Tiedman's Real
Property, sec. 45, et seq.; 3 Words & Phrases, 2491;
*Terry v. Hood*, 55 South. 423; *Simmons v. Augusta*, 3
Port. 69; *Hawkins v. Sledge*, 29 Ala. 489. The daught-
er of the first taker under the will is the plaintiff in
this case. She is the only one who fits the description
in the will, and was not in existence at the time of the
execution of the will, nor at the time of the death of
testator.—*Machen v. Machen*, 15 Ala. 373; *Lenoir v.
Raney*, 15 Ala. 667; *Ewing v. Standifer*, 18 Ala. 400;
*Hammer v. Smith*, 22 Ala. 433; *Isbell v. Macklin*, 24
Ala. 315; *Landman v. Snodgrass*, 26 Ala. 593; *Mason
v. Pate*, 34 Ala. 379. The case of *Young v. Kinnebrew*,
36 Ala. 97, is on all-fours both in fact and in princi-
ple with the case at bar. The intention, of course, of
the donor must prevail, and the words which he uses
are to be taken in their natural and proper senses,
technical words according to their technical meaning,
unless the context furnishes a clear intention to the
contrary. It follows then that the gift of the grand-
daughter and the heirs of her body gave an estate tail
which is raised to an absolute fee.—*Martin v. McCrae*,
30 Ala. 116; *Bradford v. Howell*, 42 Ala. 422; *Smith v.
Greer*, 88 Ala. 414; *Holt v. Pickett*, 111 Ala. 362; *Car-
ter v. Crouch*, 157 Ala. 470; *Wallace v. Hodges*, 160
Ala. 276. Or that the granddaughter's title after issue
born and living created an absolute fee which was

alienated by the deed of her and her husband, and vested in her grantee in absolute title.—All the authorities supra.

W. F. HOGUE, for appellee. Under the will the granddaughter took only a life estate terminable at her death. —*Wilson v. Alston,* 25 South. 225; *May v. Ritchie,* 65 Ala. 604; *Darden v. Burns,* 6 Ala. 473; sec. 3399, Code 1907; *Powell v. Glenn,* 21 Ala. 466; *McVay v. Ijans,* 27 Ala. 243; *Williams v. McConnico,* 36 Ala. 30; *Campbell v. Noble,* 19 South. 28; *Woodley v. Finley,* 9 Ala. 716.

SAYRE, J.—In this case the ownership of land is in controversy between a daughter of Margaret Clarissa King and a purchaser from her. The result depends upon the meaning and effect to be ascribed to the will of Elias King, who died in 1852. So much of the will as affects the property is as folows: "I give to my son Edwin W. King, in trust for my beloved granddaughter, Margaret Clarissa King, the following described land, viz.: (Describing the land in controversy.) The property above given to my son Edwin, in trust for my granddaughter Margaret Clarissa King, is given for the sole and separate use and benefit of my said granddaughter and the heirs born of her body free from any control or liability for the debts of any husband she may hereafter have, and should my said granddaughter die without having issue unto her born and living, then I wish the property above given to her equally divided among the sisters of my said granddaughter, the sisters alluded to being begotten by my son Edwin; the proceeds arising from working the land and negroes above given I give to my wife and son Edwin, after defraying all the expenses of my said granddaugh-

ter, until my granddaughter arrives at the age of seventeen years, after she reaches that age then all the proceeds to be applied for her benefit." At the time of the execution of this will and at the time it was put into effect by testator's death, Margaret Clarissa King was unmarried and under 17 years of age. Later she married, and plaintiff (appellee), her daughter, was born in 1856. The trustee died in 1860. In 1886 Margaret Clarissa King, then Margaret Clarissa Huey, and her second husband, J. G. L. Huey, conveyed the land to Lovelaces, from whom it passed by mesne conveyances to defendant, and since that they, and those holding under them by successive alienations, including defendant, have been continuously in possession of the lands claiming them adversely.

The question propounded to the court in the agreed case submitted to it was, in substance, this: Did Margaret Clarissa King take a life estate with remainder to the heirs of her body living at the time of her death, as plaintiff (appellee) contended, or did she take a fee tail which was converted into an absolute fee by the statute of 1812 or a fee under the rule in *Shelley Case,* of force in this state at the time of testator's death, as defendant contended?

After consulting the arguments of counsel and the authorities cited in their briefs, and many adjudicated cases besides, our conclusion that Margaret Clarissa (King) Huey's deed under the statute conveyed the entire fee to those grantees under whom the defendant claims has been determined on considerations which will be briefly stated.

The will created a trust estate for the benefit of Margaret Clarissa; but the trust was executed, not executory—that is, no conveyances were to be executed to put it into effect—and in the case of an executed trust

equity will construe the limitations in the same manner as similar legal limitations.—*Young v. Kinnebrew,* 36 Ala. 97.

The language of the will purports to give the property to Margaret Clarissa King "and the heirs born of her body." There seems to be no question but that at the common law, in the circumstances which have been stated, this gift, unaffected by any inferences of a different testamentary intent to be drawn from the context, would have created a base, conditional, or qualified fee, giving the whole estate to the donee and only limiting the line of descent to the general heirs of the donee's body, a fee tail general, and that under the statute of 1812 (section 3397 of the Code of 1907) it vested in her the same power over the whole estate as in cases of pure and absolute fees. "All the modern cases contain one uniform language, and declare that the words 'heirs of the body,' whether in deeds or wills, are construed as words of limitation, unless it clearly and unequivocally appears that they are used to designate certain individuals answering the description of heirs at the death of the party."—4 Kent, 228; *Young v. Kinnebrew, supra; Smith v. Greer,* 88 Ala. 414, 6 South. 911; *Slayton v. Blount,* 93 Ala. 575, 9 South. 241. Appellee concedes this, but seeks an affirmance on the ground that other parts of the will explain that the testator intended that Margaret Clarissa took a life estate only with remainder to her children living at the time of her death.

"The words 'heirs of the body' will indeed yield to a clear particular intent that the estate shall be only for life, and that may be from the effect of superadded words, or any expressions showing the particular intent of the testator; but that must be clearly intelligible and unequivocal."—*Jesson v. Wright,* 2 Bli. 50; 10 Eng.

Rul. Cas. 745. The terms "heirs," or "heirs of the body," may be properly interpreted as meaning "children"; but this is not the ordinary and primary meaning of these terms, and to so construe them requires peculiarities of the instrument, whether deed or will, clearly evincing an intention to that end.—*Rosenau v. Childress*, 111 Ala. 214, 20 South. 95. Such peculiarities are generally found in the unskillful use of technical terms, importing inconsistencies into the instrument. Always the intention of the donor must prevail unless it runs counter to established rules of law, but in ascertaining that intention "the words he uses are to be taken in their natural and proper sense, which implies that technical words are to be construed according to their technical meaning, unless a clear indication is furnished by the context that they were used in a different sense."—*Young v. Kinnebrew, supra.* They must be accepted with the meaning which for ages has been affixed to them, and upon which a rule of property has been established and maintained wherever the common law prevails. It is dangerous, where words have a fixed legal effect, to suffer them to be controlled without some clear expression, or necessary implication.—*Jesson v. Wright, supra.*

Here the language used is the technical language of limitation. The will is not artificially drawn, nor is there any indication that the testator was ignorant of the meaning of the terms he used. The word "born" neither added to nor detracted from "the heirs of her body," for "the ancestor during his life beareth in his body, in judgment of law, all his heirs; and therefore it is truly said that 'Hæres est pars antecessoris' " (2 Coke, Litt. 146), and "Expressio eorum quæ tacite insunt nihil operatur." There is a limitation over, but it is not to the heirs or heirs of the body of the first donee;

it is a limitation over by way of executory devise to the sisters of the donee in the event she should die without having issue then living. That contingency has been defeated by the failure of the event upon which it depended, no claim of interest under it is involved, and in no event could it have affected the estate previously granted. The gift is immediate to the heirs born of the donee's body, and, if it be assumed that the testator intended thereby "children," still, unrestricted by any other terms of the will, and in the absence of children then living, it created an estate tail.—*Sullivan v. McLaughlin,* 99 Ala. 60, 11 South. 447.

If the testator had said, "I give this property to my granddaughter and her children," without more, such a devise, in the circumstances of this case, would have vested in her, under our statute, an absolute fee. Since Coke's time the rule has been that where lands are devised to a person and his children, and he has no children at the time of the devise, the parent takes an estate tail. And the reason assigned for this doctrine is that: "The intent of the devisor is manifest and certain that his children or issues (the children or issues of the devisee) should take, and as immediate devisees they cannot take, because they are not in rerum natura, and by way of remainder they cannot take, for that was not his intent, for the gift is immediate; therefore such words shall be taken as words of limitation."—*Wild's Case,* 6 Co. Rep. 17; 10 Eng. Rul. Cas. 773. This rule has been frequently recognized in our own cases. Thus in *Vanzant v. Morris,* 25 Ala. 285, the court said: "There can be no doubt that a testator by his will can limit property, whether real or personal, to one and to his children then born; but a bequest to A. and his children, if A. has no children either at the time the will was made, or when it takes effect by the death of

the testator, never has been held to create any interest in after-born children as purchasers."—*Smith v. Ashurst,* 34 Ala. 309; *Mason v. Pate,* Ib. 379; *Williams v. McConnico,* 36 Ala. 22; *Sullivan v. McLaughlin, supra; Moore v. Lee,* 105 Ala. 439, 17 South. 15. "Thus, the cases have established, it should seem, that a devise to a man and his children, he having none at the time of the devise, gives him an estate tail."—2 Jar. Wills (6th Ed.) p. 385.

In order to sustain appellee's recovery in this case, it is necessary not only to hold that testator meant "children" where he said "heirs born of her body," but that by the terms of an immediate gift, without more, he intended a gift over after the termination of an estate for the life of another. But the conception of either notion, or of their concurrence, can rest only upon wanton assumption. So far as mere language goes, there is no indication of such intention. It follows that the will of Elias King vested an absolute fee in his granddaughter Margaret Clarissa King, which has passed by mesne conveyances to defendants in the court below, appellants here.

Appellee relies upon *Powell v. Glenn,* 21 Ala. 458. That case is distinguishable from this at a number of points. It admits, however, everything contended for by appellant in the case at hand. For the purposes of this case we need only refer to comments upon it in the later case of *Young v. Kinnebrew, supra,* where *McVay v. Ijams,* 27 Ala. 238, is cited by the court.

In *Williams v. McConnico,* 36 Ala. 22, also urged by appellee, the court expressed some dissatisfaction with the doctrine of *Wild's Case,* now that the statute converts estates tail into unqualified fees, but recognized it as still of force in this state. In that case the grantor, "wishing to make permanent support for her and

her children," conveyed to a trustee "for the sole use and benefit of my said daughter, Prudence Richardson and the heirs of her body forever; but in case the said Prudence shall die without an heir" a limitation over similar to that in the case at bar. The conclusion that the grantor meant "children" by "heirs of the body" does not seem difficult, because he used both terms and used them to designate the same persons, thus clearly indicating, as the court observed, that the instrument was prepared by a person not familiar with the precise meaning of the technical phrases employed—a consideration not to be found in the case at hand. In respect to the quality of the estate created in the grantee, the court said, "The vesting of the absolute property in the daughter is inconsistent with the declared purpose of the donor that the gift was to make permanent support for her and her children,". adding that this purpose "is best accomplished by holding that they (the children) take, as remaindermen, the absolute property on the death of their mother"—herein differing from the case at bar, wherein it clearly appears, we think, that the object of the trust was to exclude the marital rights of any husband the donee might have, and wherein the further provision was that, after the donee arrived at the age of 17 years, all the proceeds were to be applied for her benefit.

In *Wilson v. Alston,* 122 Ala. 630, 25 South. 225, the grant was to Grace E. Wilson "and to the heirs of her body after her death." It was held that the conveyance imported the creation of an interest for life and a remainder in tail—a clear case without influence here.

Appellee seems to rely most confidently upon the case of *Campbell v. Noble,* 110 Ala. 382, 19 South. 28. That case differed from this in two material respects: (1) In

[Lay v. Fuller, et al.]

form, as the court says, the devise provided a life estate with remainder to the heirs of her body; (2) with obvious justice the court in that case says of the will, which went into effect in 1850: "It was drawn by a person utterly unskilled and incompetent to such a task. Manifestly no knowledge of, or regard to, the meaning of technical terms existed or was observed. Terms of different legal signification are used indiscriminately to express the same meaning." On this consideration and some indications furnished by the will, but without "enlarging" its opinion by quoting the language of the will, the court concluded that "heirs of the body," as there used, meant "children." Admitting the correctness of the court's ruling in the last-mentioned particular, we find no reason or occasion to question the general result of the case. As we read the opinion, it concedes the correctness of those propositions of law which have determined our conclusion in the present case.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., and DE GRAFFENRIED, J., not sitting; the latter being disqualified.