# Hibler, *et al. v.* Oliver, *et al.*

*Bill for Partition.*

(Decided May 20, 1915. 69 South. 477.)

1. *Wills; Construction; Estates Devised; Conditional Fee.*—Where the will provided that the lands of the testator should be sold, and that all the property should go to his children and the heirs of their own bodies, and in the event that one of the children should die without lawful issue, then his share was to go to the other children, or the heirs of their body, and a son died leaving issue such son acquired a conditional fee, subject to be cut down to a life estate if he should die without issue, but such condition not happening, such son's issue could not take under the will, for by their existence at his death, the conditional fee to the father was made absolute.

2. *Conversion; Reconversion; Election of Beneficiaries.*—Where the will directed the land to be sold and converted into money, equity will consider such land as money; and the fact that certain of the

legatees purchased at the sale, using their legacies in payment of the purchase price, did not constitute a reconversion into realty.

3. *Judgment; Res Judicata; Matters Concluded.*—As judgments or decrees are res judicata only as to matters which were actually litigated or should have been determined, a decree by a chancery court for the sale of certain land at the instance of the administrator, which land was directed by a will to be converted into personalty, and the taking of bonds for the preservation of certain remainders in case any legatee should die without issue, was not res judicata in a subsequent bill by the testator's grandchildren for a partition of the estate as among tenants in common; such former decree passed title to the land sold and did not attempt to limit the title of the purchaser, nor to bind the testator's grantee.

APPEAL from Sumter Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by W. G. Hibbler and others, against Sallie J. Oliver and others, to sell lands for distribution, among tenants in common, and incidentally for damages for waste. Decree for respondents and complainants appeal. Affirmed.

FRANK S. WHITE & SONS, for appellant.

OLIVER, VERNER & RICE, J. M. FOSTER, and WILLETT, & WILLETT, for appellee.

MAYFIELD, J.—Appellants filed this bill against appellees. The bill seeks a sale of lands for distribution among tenants in common, and, incidentally, an accounting as for waste. The real question presented is whether or not the bill shows complainants to have any title to the lands; that is, does it show them to be tenants in common with appellee?

· Appellants claim title through the will of their grandfather, W. H. Hibbler, and claim to have acquired a remainder, after the determination of a life estate only, which their father, James Hibbler, acquired under the same will. The will of the grandfather is short, and we here set out: "In the name of God, Amen: I, W. H.

Hibbler, being in good health, sound in body and mind, being about to take a journey from home, knowing the uncertainty of life and being desirous that all I possess should be divided among my wife and children, do make this my last will and testament.

"My desire is that my property should be divided equally among my dear wife and children, viz.: H. E. Sessums, Talbot, James, Martha, Fanny and the child that my wife is now bearing, should it live. My desire is that my wife should live on this my home residence during her natural life. My Noxubee plantation & my Washington plantation, I want sold if times are prosperous, if not as soon as they are prosperous. I then want the negroes equally divided between my dear wife and all my children and want the negroes of the children hired out until the boys become of age and until the girls become of age or marry. I don't want a division to take place only as they become of age, for fear some of them should have bad luck with their property, but I want my wife to draw her part and let the children's negroes be hired out undivided, and let each one draw his proportional part as they become of age or girls marry. I want the money and property given to my daughter H. E. Sessums to be accounted into her share, five thousand five hundred dollars in money and one negro girl named Lizzy, value at one thousand dollars.

N. B. I want my land sold one, two, three, four, and five years credit with interest from date of sale and my home place sold at the death of my dear wife and divided between all my children or their lawful heirs of their bodies. My desire and will is that all my property, land and negroes go to my children and the heirs of their own bodies, and should any one of them die without a lawful heir of their own bodies, I want all

they have received from my estate to return to my other children or the heirs of their bodies.

"Written, signed and witnessed this the 28th day of Feby., 1861.                    William H. Hibbler."

(1) Appellants base their claim upon the last sentence in the last clause of the will. We feel certain in deciding that appellants did not take a remainder in these or any other lands by virtue of this or any other clause in this will. If the title to the lands of the testator could be said to have passed to the devisees by the will, then their father took a fee, and not a life estate. While the fee which he took was subject to be defeated by his dying without issue, the bill shows that he died with issue and that appellants are the issue. Therefore it conclusively appears from the bill that the only condition which could have defeated or cut down the fee of their father never happened, and that complainants could not take as remaindermen because there was no remainder.

Wills with similar provisions have been construed by this court, and in each instance they were given the effect which we now give this clause under consideration.—*Carter v. Couch,* 157 Ala. 470, 47 South. 1006, 20 L. R. A. (N. S.) 858; *Shuttle & Weaver v. Barker,* 178 Ala. 366, 60 South. 157. In the latter case, in a headnote, the ruling is thus stated: "Where a testator gave to his son certain described real estate in trust for his granddaughter for her sole use, and the heirs born to her body, free from any control or liability for the debts of any husband she might subsequently have, and in the event of her death, without living issue, the property should go to others, and at the time of the will, and testator's death, such granddaughter was an infant and unmarried, but subsequently married, and

had a child, the granddaughter acquired an absolute fee, and a grantee under a conveyance executed by her and her husband acquired title."

The first of these cases cites the text, 24 American & English Encyclopedia of Law, pp. 431, 432. The rule as to limitations over, after failure of issue, is thus stated there: "Limitations after a fee simple or determinable fee must be executory, since limitations could not take effect at common law as a remainder. Executory limitations of this character may take effect in defeasance of a fee simple or a fee tail, or may await the regular determination of a determinable fee, provided it does not offend the rule against perpetuities. After a conditional fee an executory devise may be valid, although it appears that a different rule has prevailed in South Carolina."

Any possible rights or titles which complainants could have acquired under the will in question must fall within this rule. The children of the testator unquestionably take a fee, either absolute or conditional. If absolute, then, of course, appellants here, who were the grandchildren of the testator, would take nothing under the will of their grandfather, but would have to take as heirs, by inheritance from their father. If they were to claim by inheritance from their father, they could not take, because their father conveyed by warranty, and had no interest when he died. If the father's estate was a conditional fee (which it unquestionably was), subject to be defeated upon his dying without issue, then the bill shows that the condition did not happen—the father died with children living, who were the complainants. In no event could these complainants take under their grandfather's will. Their existence at the death of their father made the

devise or legacy to their father an absolute fee. If the father had never had any children, or probably if he had no issue living at his death, a remainder at his death might have gone over as an executory devise; but it could not go to his children, these plaintiffs, because his fee was made absolute by reason of the fact that children or issue were living when he died.

The rule is thus stated by the Supreme Court of the United States in *Abbott v. Essex Co.*, 18 How. 213, 15 L. Ed. 352:

"In the case of *Pells v. Brown*, Cro. Jac. 590, where there was a devise 'to A. in fee and, if he die without issue living, then C. shall have the land,' it was held to be an executory devise to C., on the contingency of A. dying in the lifetime of C. without issue.  *  *  *  In *Porter v. Bradley*, 3 T. R. 143, where lands were devised to A. and his heirs, and if he die leaving no issue behind him then over, it was decided that the limitation over was good by way of executory devise; and Lord Kenyon acknowledges the case of *Pells v. Brown*, to be the foundation and magna charta of this branch of the law,' deciding that the words 'leaving no issue behind him,' showed clearly that the testator did not contemplate an indefinite failure of issue."

(2) If the will had passed the title out of the testator to the land in question, the plaintiffs would have taken nothing under it; but the will did not pass title to any one, so far as the lands were concerned. It merely directed the lands should be sold, and the proceeds of the sale were disposed of as legacies. There was no attempt to dispose of the land by devising the land itself, except that the wife of the testator (the grandmother of the complainants) was given a life es-

tate therein. This life estate, however, is not important, because the life tenant died before the testator. The lands were therefore, by the will and the sale as directed therein, converted into personalty, under the well-settled rule in this state. In the case of *High v. Worley,* 33 Ala. 196, speaking of a similar provision in a will as to the sale of lands, it is said: "It is a well-recognized principle of equity jurisdiction that the court of chancery will consider land, directed to be sold and converted into money, as money. * * * The land being by the will transmuted into personalty, it so remains, unless it has been reconverted into realty. Such a reconversion is susceptible of production by the election of the beneficiaries. The rule, which permits the reconversion by the election of the parties interested, is founded in the fitness and equity of permitting them to consult their own interests, according to the dictates of their own judgments, and in the utter folly of compelling them to accomplish the same object by purchasing in at the sale. *Commonwealth v. Martin,* 5 Munf. (Va.) 117-127. But the election cannot be made by a part of the several persons interested. It must be made by all. The direction to sell the land gives to each a right to have it sold, and takes away from each one the separate right to reconvert his single share, and thus have the sale of a fraction.—*Fletcher v. Ashburner,* 1 Brown's C. C. (Pa.) 330 *Willings v. Peters,* 7 Pa. 287; *Pratt v. Talliaferro,* 3 Leigh (Va.) 419."

There was no reconversion in this case. The chancellor, in directing the sale, allowed the children or legatees to purchase, and directed the administrator to allow them to use their legacies in payment of the purchase price, which was done as to the lands in question. The fact that two of the children purchased at

the sale did not amount to a reconversion and was not so treated by the chancellor.

(3) The complainants contend that, whatever might once have been a proper construction of the will in question, it was construed according to their contention by the chancery court, when the administrator with the will annexed filed his bill to have the will construed, the sale of the lands directed, and security bonds required from the children of the testator to protect the interests of remaindermen in the event the child to whom money was paid should die without issue, in which event there was a remainder over, which, as we have shown, would take effect as an executory devise.

It is further argued by appellants that this construction of the chancery court is res judicata as to the rights of the parties to this suit. This argument is ingenious, but not convincing. In the first place, as before shown, the will did not attempt to dispose of the land by passing the title thereof to any one; it directed a sale of the land in question, and of course the title passed by the sale. And it was the testator's title which passed by this sale, and not that of any devisee or legatee. This sale passed a fee-simple title, not merely a life estate or remainder. The purchaser at the sale acquired that fee-simple title by virtue of the sale, and not as a devisee under the will.

The chancery court did not undertake to limit, condition, or circumscribe the title which the purchaser at that sale should or did acquire; it only undertook to protect the legacies in the event the legatees should die without issue, so that the remainder might then go over as an executory devise, as was provided in the will. It is true that the chancellor does say in his opin-

ion that the children of the testator took a life estate only; but this was either an error of judgment or an inaccurate expression. The children did not take a life estate under the will; they each took a fee, subject to be defeated or cut down to a life estate in the event of dying without issue. If, however, it could be said that the title to the land passed by the will, the son, James, took a fee, which was never cut down to a life estate, because he had issue when he died; the complainants themselves were that issue. So in no event could these complainants take under the will.

The decree, however, was not intended to bind, and and could not have bound, these complainants. They were not then living, and, of course, were not parties to the proceedings, and so could not have been bound thereby. And if the decree was not binding against them, it could not be binding or res judicata for them. For the same reason it was not binding for or against the respondents, so far as the title to the lands in question was concerned. While, of course, the deed made by the administrator with the will annexed was a link in respondent's chain of title, and the chancery court ordered the sale and directed the deed to be made, yet it did not decree that a life estate only was to be sold; it directed that the fee should be sold, and the fee was sold and conveyed. The purchasers took the fee, and of course their absolute and warranty deeds passed that fee to their vendees.

The bill shows that respondents (appellees here) acquired the fee by acquiring all the title which the purchasers at the administrator's sale acquired. Appellants seem to contend that the administrator's sale was intended to pass only a life estate. In this they are in error. This sale by the will and decree was

intended to pass, and did actually pass the fee. This sale was not intended to pass, and did not pass, the title out of the children of the testator; but it was intended to pass, and did pass, the title of the testator, and passed it to the purchasers by sale and deed, as directed in the will. It could and did make no difference that the children of the testator, who were the chief legatees in the will, purchased at this sale. They acquired the same title thereby which a stranger to the will would have acquired by a like proceeding.

If it had been decreed by the chancery court that the children of the testator took a life estate, and their children the remainder, as was said or intended in the opinion of the chancellor, it would not and could not have been res judicata as to the question litigated in this suit. This, for the reason that the question here involved was not litigable—was not, and could not properly have been made, an issue in the chancery court. The statement of the chancellor, in his opinion, that the children of the testator took a life estate only, was a mere gratuitious statement, so far as the title to the land in question was concerned.

Judgments or decrees are res judicata only as to matters which are actually, or could or should have been, adjudicated and determined thereby. In some instances, this matter must have been actually litigated and determined; in others, it is sufficient if the matter could and ought to have been adjudicated. All judgments and decrees must be construed in reference to the pleadings and the issues.—*Vicksburg v. Henson,* 231 U. S. 259, 34 Sup. Ct. 95, 58 L. Ed. 209; *Ford's Case,* 68 Ala. 141; *Lord Chadbourne,* 41 Me. 429, 66 Am. Dec. 290; *Southern Pac. R. Co. v. United States,* 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355; *Hooper v. Pierce,* 161 Ala.

517, 44 South. 108; *Dobson v. Hurley,* 129 Ala. 380, 30 South. 598.

The will, as before stated, did not attempt to pass estates to lands, except a life estate to the wife, who died before the testator. As before stated, it directed that after the death of the wife the lands should be sold—that is, the absolute fee title thereto; and it was only the proceeds of the sale which the will attempted to dispose of, and as to which it created a conditonal fee, subject to be defeated upon the first taker's dying without issue. The bill was not filed for the purpose of determining what title a purchaser at that sale would take, or what character of title should be sold. It was the proceeds of the sale only which the chancery court was interested or concerned in protecting, so that the remainder over might be preserved, and it was this only which the chancery court attempted to preserve. Moreover, so far as these complainants are concerned, this bill, and the proceedings in the chancery court in connection with the will, conclusively show that the only condition upon which these complainants would or could ever have been entitled to a remainder over in the proceeds of the sale never happened, and can never hereafter happen.

So it appears that there was no attempt on the part of the chancellor to decree the character of title which the legatees took to the land, but only as to the proceeds from the sale of the lands; and while the chancellor says in his opinion that the children of the testator took only a life estate under the will, yet the decree as a whole shows that the decree was in accordance with the holding in this case that they took a fee subject to be defeated upon their dying without issue. The bonds required were conditioned to pay over

to the remaindermen only on the contingency mentioned in the will—that is, upon the failure of the first taker to have or to leave issue. The legatee under and through whom these complainants claim is shown by this bill to have died with issue; therefore there was no remainder, so far as this child, James Hibbler, was concerned. And even if there had been a remainder, and it had gone over, it would have gone to the testator's other children, or their issue, and not to the children of the first taker. There is no provision in the will or in the chancellor's decree which provides that, upon the death of one of the first takers, the remainder of his legacy shall go over to the death of such life tenant; but the provision is that it shall go to the testator's other children or their issue.

It follows from what we have said that the bill shows that complainants have no title, legal or equitable, to the lands sought to be sold for division among tenants in common. The chancellor therefore correctly sustained the demurrer to their bill, for want of equity; and the decree of the chancery court is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ, concur.