[Cannon v. Birmingham Trust & Savings Co., et al.]

# Cannon *v.* Birmingham Trust & Savings Co., et al.

### *Bill to Annul and Cancel a Trust Agreement.*

(Decided October 21, 1915.   Rehearing denied November 18, 1915.
69 South. 934.)

1. *Cancellation of Instrument; Relief.*—Where the wife filed her bill against respondent trust company to recover funds in its custody under a written agreement embodying provisions of a parol ante-nuptial contract, there being two written agreements, one of 1908, and one of 1911, plaintiff seeking to cancel that of 1911, and the amended bill, having incorporated the agreement of 1908, alleged that the agreement of 1911 superseded that of 1908, upon the cancellation of the agreement of 1911, the complainant's wife could not recover the property held by the respondent trust company under the agreement of 1911, since respondent is still entitled to hold under the agreement of 1908, similar in that respect.

2. *Equity; Bill; Demurrer; Construction.*—Where a bill is attacked by demurrer the bill must be construed most strongly against the complainant.

3. *Gifts; Delivery; Stock.*—Where a prospective husband sought to make a parol gift of corporate stock to his prospective bride, and the gift was never consummated by a delivery of the stock, it was inoperative.

4. *Contracts; Illegality; Execution.*—Where a writen agreement superseded an ante-nuptial contract, and was illegal and void because it contained stipulations that its provisions for the benefit of the wife should be accepted by her in lieu of any claim of dower or alimony in the event of separation, after such contract was executed, the wife having accepted its fruits until it was impossible for the contingency as to alimony to happen, the courts would not cancel the contract at the suit of the wife, as all who share in illegal or immoral transactions are left both by law and equity where they find them; neither law nor equity will enforce such agreements or contracts if executory, nor rescind nor undo them at the suit of a participant when executed.

5. *Cancellation of Instruments; Grounds; Fraud.*—Where written agreements superseding prior parol contracts between the parties were procured from one of them by fraud or duress, the aggrieved party may procure cancellation of the instrument.

6. *Same; Procedure; Pleading.*—Where the wife sues to cancel written instruments which superseded parol ante-nuptial agreements on the ground that such instruments were procured by fraud, the facts out of which such frauds were supposed to have arisen should have been stated; a mere general averment of fraud as a conclusion of law without supporting facts not being sufficient.

[Cannon v. Birmingham Trust & Savings Co., et al.]

7. *Husband and Wife; Antenuptial Agreement; Rescission; Consideration.*—Where a prospective husband and wife entered into a parol antenuptial agreement which had not been executed when superseded by a written agreement, the release by the parties of their respective rights under the parol agreement was a sufficient consideration to support the written agreement, and the release of their rights under such written agreement was a sufficient consideration to support a second written agreement superseding the first.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by Rose Johns Cannon against the Birmingham Trust & Savings Company, and others, to cancel a trust agreement. From a decree sustaining demurrers to her bill, complainant appeals. Affirmed.

ALLEN & BELL, and BURGIN, JENKINS & BROWN, for appellant.

TILLMAN, BRADLEY & MORROW, and ROY M. STERN, for appellee.

MAYFIELD, J.—The case made by appellant in her brief is practically as follows: Appellant, who is the widow of L. W. Johns, deceased, filed her bill in the chancery court of Jefferson county, Ala., seeking to cancel or annul a certain trust agreement signed by the defendants and herself, the date of which said agreement was December 22, 1911. She also seeks to recover the sum of $32,357.60, or the securities in which said sum was invested, which amount, it is alleged by the bill, "respondents hold * * * and decline and refuse to pay or deliver * * * to complainant, and they both claim to hold the same under and by virtue of the terms and provisions of same written instrument." It is also alleged by the bill, as amended, that the complainant acquired her right to said sum of money by antenuptial gift from her husband, said L. W. Johns, of certain shares of the capital stock of the Birmingham Railway,

Light & Power Company, which said shares of the capital stock of said company were exchanged for certain shares in the American Cities Railway & Light Company, as evidenced by its certificates numbered 1235 and 1064 for the common stock of said company, and certificates numbered 2063 and 594 for the preferred stock of said company, which said last-named shares of stock and certificates were held by the said Birmingham Trust & Savings Company in trust for the use and benefit of this complainant for and in the place of said antenuptial gift. The grounds alleged for cancellation and annulment of this instrument are, that the same was an unconscionable contract; that it was without consideration passing to complainant; that it was signed by her under duress or undue influence; or that its execution by her was procured by fraud. Complainant attached as an exhibit to her bill a contract signed by L. W. Johns, the defendant, Birmingham Trust & Savings Company, and the complainant, on the 4th day of July, 1908. It is averred that this instrument showed how complainant became the owner of said shares of stock which were subsequently converted into money. After this contract last referred to was made an exhibit to the bill, demurrers were filed on the theory that this contract of itself, independent of the one sought to be canceled and annulled by bill, afforded the respondents the right to withhold from the complainant the money or securities sought to be recovered by the bill. To meet the ruling of the court on these demurrers an amendment was filed, alleging that at the time this contract was signed the complainant and her husband were living together as husband and wife, and that a part of the consideration and one of the principal considerations of said contract was to the effect that said agreement, when executed, should be in lieu of any claim for alimony by

complainant against her said husband in the event of a separation, and it was alleged that this illegal consideration and provision in this contract was inseparable from the balance of same so as to render the whole agreement absolutely void as against public policy, and to afford the respondents no legal authority to hold and retain the moneys and securities sought to be recovered. To this bill as last amended, the chancellor sustained a demurrer, and from the decree sustaining the same this appeal is taken.

Such, as stated, is the case made by appellant's brief.

(1) If it should be conceded (but it is not) that the original bill was sufficient in its averments to warrant relief, the amended bill was certainly subject to several of the 158 grounds of demurrer assigned. The amended bill having made the agreement of July 4, 1908, a part thereof, and the agreement of December 22, 1911, sought to be canceled, being made a substitute for the former, the complainant could not be afforded the relief, if the latter agreement should be canceled; because, under the former agreement, the respondents would be entitled to hold the funds sought to be taken from them. There is no attempt made in the bill to have the first agreement —that of July 4, 1908—canceled. The bill only seeks to have the latter agreement canceled. It is true that complainant contends that she is not bound by this first written agreement; and that she was compelled, by the rulings of the chancellor on demurrer to her original bill, to add this written agreement of July 4, 1908, as an exhibit to her bill. This contention, however, is of course not tenable. She was not forced to add it as an exhibit to her bill, or the record does not show that she was so compelled by the chancellor. It is true, however, that amendment was made after demurrer was sustained, and the amendment was probably intended to meet the

defect pointed out by the demurrer, but the act of so amending was voluntary. The complainant, having made this agreement a part of her bill, was bound by it, unless she also sought to have it canceled or annulled.

(2, 3) The evident contention of appellant is that she is entitled to the trust fund, under a prior and oral antenuptial agreement between her and her deceased husband, L. W. Johns, and that the present trust fund is the proceeds of this antenuptial gift. The fallacy of this contention, however, is made certain by the fact that, construing the bill most strongly against the complainant —as we must do—it fails to aver that this antenuptial parol agreement was ever consummated by a delivery of the gift. In fact, the bill affirmatively shows that it never was so consummated. The bill affirmatively shows that the written postnuptial agreement of July 4, 1908, was in lieu of the oral antenuptial one; and that the written agreement of December 22, 1911, was, in turn, in lieu of the one of July 4, 1908. It is true that complainant seeks to have the last agreement canceled, and claims that the one of July 4, 1908, is void, but does not seek to have it canceled. It is certainly not void on its face, and, as before stated, if the last one should be canceled as prayed, the one of July 4, 1908, would stand, and would prevent the relief prayed, because it provides that these respondents shall hold the fund during the life of the complainant.

(4) It is claimed that the written agreement of July 4, 1908, is void because of this provision contained therein: "Now, in consideration of the premises, the parties hereto agree that this agreement when executed shall be in lieu of said original antenuptial agreement and gift, and that the provisions herein contained for the benefit of the party of the second part when accepted by her shall be in lieu of any claim of dower in the property of

the party of the first part, or of alimony against the party of the first part in the event of separation.

"The party of the first part in lieu of the said antenuptial gift, hereby assigns, to the party of the second part the shares of common and preferred stock of the American Cities Railway and Light Company evidenced by the certificates hereinbefore mentioned in the recitals of this agreement, to be held in trust for her by the Birmingham Trust & Savings Company, a corporation, as trustee, for the uses and upon the trusts herein provided, and the party of the first part agees to cause said certificates of stock to be transferred to the Birmingham Trust & Savings Company, as trustee, aforesaid, and to cause such transfer to be properly registered on the stock books of said corporation and new certificates to be issued, in said Birmingham Trust & Savings Company, as trustee; two certificates to be issued for the preferred stock dividing the same into equal quantities and two certificates to be issued for the common stock, dividing the same likewise in equal quantities."

Conceding (without deciding) that the last clause of the above-quoted provision would render the agreement void, yet the agreement being executed, and complainant being a party to it and having accepted the fruits of it until it became impossible for the contingency as to alimony to happen, the courts will not now relieve her, one of the chief offenders, from the burdens imposed by such agreement, if such there be. The law and equity leaves all who do, or share in, illegal or immoral transactions, where it finds them. It will not enforce such agreements or contracts if executory, nor will it undo or rescind such transactions, agreements, or contracts when executed, at the suit of any one of the participants.— *Treadwell v. Torbert,* 119 Ala. 279, 24 South. 54, 72 Am. St. Rep. 918; *Williams v. Higgins,* 69 Ala. 517; *Hill v. Freeman,* 73 Ala. 200, 49 Am. Rep. 48.

(5) As before stated, complainant claims under the original antenuptial agreement, but fails to show that it was ever consummated by the vesting of the title to the gift in complainant; but affirmatively shows that it was not so consummated, and that other property was substituted for the gift and under different written agreements. The bill does not seek specific performance of the gift, and shows that it could not now be specifically enforced, because the subject of the gift is gone and the donor is dead. The bill seeks to recover the funds in question as the proceeds of the original gift or what was agreed to be given; but, to this end, it seeks to avoid all agreements of the complainant's by which the subject of the gift, and the conditions thereof, were changed by her and the donor. Of course, this might be done if facts were averred which showed that the donee was defrauded out of the gift, and that she acted under such duress that she was not bound by the subsequent agreements. In this respect, however, the original bill fails, and the fault was pointed out by the demurrer. No facts—certainly none sufficient—are alleged to show that the donee has been overreached or defrauded. Construing the averments against the pleader, they merely show that she has changed her mind since she signed the written agreements, and no longer desires to be bound by them, but desires the court to substitute in lieu thereof the original oral antenuptial gift. This, of course, cannot be done, because the subject-matter is not, and has never been, within the control of any of the parties to this suit. It was disposed of by the original donor with the consent and agreement of the donee, and the present fund substituted in lieu thereof with the conditions mentioned in the trust agreement.

The bill shows that the original parol agreement was never consummated by a delivery of the gift to the

donee; that the control thereof never passed out of the donor except by the agreement of trust sought to be annulled.

(6) The rules as to the sufficiency of averments of fraud have been frequently stated, and are strict. Fraud is a conclusion of law from facts stated and proved. When it is pleaded at law, or in equity, the facts out of which it is supposed to arise must be stated; a mere general averment of fraud, without such facts, is not sufficient.—*Flewellen v. Crane,* 58 Ala. 627; *Morgan v. Morgan,* 68 Ala. 80; *Chamberlain v. Dorrance,* 69 Ala. 40; *McHan v. Ordway,* 76 Ala. 347.

Fraud, whether pleaded at law or in equity, whether constituting a right of action or a defense thereto, must be set up with the facts supposed to constitute it; and the facts must be positively averred, that the court can see that fraud has intervened; general allegations or conclusions of law as to fraud are never allowable.— *McDonald v. Pearson,* 114 Ala. 630, 21 South. 534; *Loucheim v. Bank,* 98 Ala. 521, 13 South. 374; *Reynolds v. Coal Co.,* 100 Ala. 296, 14 South. 573.

What was said in the case of *Pratt Company v. McClain,* 135 Ala. 455, 33 South. 186, 93 Am. St. Rep. 35, is apt and conclusive in this case. It was there said: "Before cancellation can be decreed for fraud practiced in the procurement of complainant's deed, the bill must aver facts from which fraud is the legal result; the rule being that averments of conclusions are insufficient to raise an issue of fraud.—*Mountain v. Whitman,* 103 Ala. 630, 16 South. 15; *Little v. Sterne,* 125 Ala. 609, 27 South. 972; *Warren v. Hunt,* 114 Ala. 506, 21 South. 939."

(7) As to there being no consideration for the agreements sought to be avoided, such a proposition is not tenable. The antenuptial agreement was not consum-

mated when the first written agreement was made, and this fact certainly furnished a consideration for making the written agreement in lieu of the oral antenuptial one. And the first written agreement certainly furnished a sufficient consideration for the second, if the parties actually agreed to its provisions.

Finding no error, the decree of the chancellor must be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, and THOMAS, JJ., concur.