(94 South. 606)

## PETERS MINERAL LAND CO. v. HOOPER et al. (6 Div. 618.)

(Supreme Court of Alabama. Oct. 26, 1922.)

1. **Executors and administrators** ⬤⟿121(2)— Duties and powers not personal to appointees under will exercisable by administrator de bonis non.

Where the duties and powers conferred by a will on parties named to take charge and sell lands in another state were not personal, they were exercisable by an administrator de bonis non cum testamento annexo and passed to him the properties for the purposes of administration.

2. **Executors and administrators** ⬤⟿365— Former relation of principal and agent did not preclude agent's purchase of land at administrator's sale in absence of agent's fraud.

Where an administrator with the will annexed, authorized to take charge of testator's unsold lands in another state and after sale to turn the proceeds over to another in trust, made an agreement with another to "look up" lands belonging to decedent and report to him, the former relation as such agent did not preclude the agent from thereafter acquiring an interest in the lands of the estate at administrator's public sale, unless the agent fraudulently concealed from administrator a material fact or did not fully and faithfully discharge his duties in relation to the employment and according to the terms thereof.

3. **Pleading** ⬤⟿8(15)—Allegations of fraud must allege facts.

Allegations of fraud at law or in equity, must state facts showing fraud.

4. **Principal and agent** ⬤⟿69(8)—After termination of relation agent can act adversely to former principal.

After one has performed his office as an agent or has in good faith severed his relation as such, he is free to negotiate for his own interest and can act adversely to his former principal as fully as any other person.

5. **Executors and administrators** ⬤⟿380(3)— Bill lacking averment that through intervention of administrator's agent as a result of his knowledge undisclosed to administrator, sale of land resulted held insufficient.

Where an administrator with the will annexed made agreement with an agent to "look up" lands belonging to decedent and on report of lands so looked up sale was had and the lands purchased by others in privity with the agent, a bill to quiet title, in which there was no averment that through any intervention of the agent as a result of his knowledge as agent or by reason of the suppression of facts or his failure of full disclosure, the sale to the others resulted, was insufficient.

6. **Courts** ⬤⟿475(2, 3)—Settlement of administration in chancery did not prevent Probate Court on discovery of unadministered assets from appointing administrator de bonis non.

The fact of removal of the administration of an estate into chancery, its settlement and final decree there, did not prevent the Probate Court later on discovery of unadministered assets and properties from appointing an administrator de bonis non and operated as a removal of such unadministered estate into chancery.

7. **Limitation of actions** ⬤⟿179(2)—Averment of lack of knowledge of contract insufficient to avoid limitation when contract itself did not constitute fraud.

In bill to quiet title where complainants claimed title through mesne conveyances from decedent, who died in 1883, and in 1903, 18 years before the bill was filed, an administrator with will annexed appointed to administer newly discovered assets made a contract with an agent to look up decedent's interests in certain lands being the lands in controversy, and fraud of the agent in not disclosing the result of his investigations to the administrator was relied on by complainants to avoid their sale to third persons through whom others held adversely to complainants, an averment that neither complainant nor its predecessors in title had knowledge of a contract between the agent and others to purchase the land and knew no facts which put them on inquiry thereof, the contract not being relied on as constituting the fraud was insufficient within Code 1907, § 4852.

8. **Limitation of actions** ⬤⟿100(12)—Fraud discovered in contemplation of law when party put on notice thereof.

Code 1907, § 4852, as to prosecution of suits on discovery of fraud, does not require actual notice, since a fraud is discovered within contemplation of law when it is readily discoverable or when a party is put on notice thereof.

9. **Vendor and purchaser** ⬤⟿231(10)—Deed effective as constructive notice from record.

A deed or other conveyance of land becomes effective as constructive notice from the moment of recordation.

10. **Limitation of actions** ⬤⟿100(1)—Mere ignorance of alleged defrauded party not sufficient to prevent running of statute.

Under Code 1907, § 4852, as to suit within one year after discovery of fraud, mere ignorance on the part of the alleged defrauded party is not sufficient to prevent running of a statute, but the ignorance must be superinduced by fraud in the form of active concealment, conduct calculated to mislead and to prevent inquiry and lull into repose.

11. **Equity** ⬤⟿141(1)—Party relying on ignorance of fact as excuse for laches must aver why he was so long ignorant.

When a party relies on his ignorance of facts material to his right as an excuse for

laches, he must show by distinct averments why he was so long ignorant and acquit himself of all knowledge of facts which would put him on inquiry and must show when he first acquired knowledge.

**12. Equity ☞219—Limitation may be set up by demurrer where cause of action in bill is prima facie within bar.**

The statute of limitations may be set up in equity by demurrer where the bill shows that the cause of action stated is prima facie within the bar of limitations or offensive to the rules which courts of equity adopt for the discouragement of stale demands.

**13. Equity ☞87(3)—Where corresponding legal right barred, equitable action barred by laches unless circumstances obviating limitation alleged.**

If a corresponding legal right is barred by limitations, an equitable action is likewise barred by laches unless special circumstances obviating the period of limitation are distinctly averred and proven.

**14. Equity ☞87(1) — In suit brought after statutory period, complainant must plead and prove laches do not exist.**

When a suit is brought within analogous time of the statute of limitations, defendant must show laches, but when brought after the statutory time, complainant must excuse delay.

**15. Judicial sales ☞45—Bill to set aside sale filed nine years after sale is demurrable if no sufficient excuse for delay is shown.**

Where a sale of land made by the register under decree of chancery was rendered voidable by irregular proceedings, a bill to have the sale set aside, filed nine years after the sale and more than eight years after the proceedings, no sufficient excuse being shown for the delay, is demurrable, as a stale demand.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by the Peters Mineral Land Company against John DeB. Hooper and others, to quiet title to lands, etc. From a decree sustaining demurrers to the bill complainant appeals. Affirmed.

The bill alleges that the complainant is in the peaceable possession of and owns certain lands in Jefferson and Walker counties, Alabama, title to which is deraigned through mesne conveyances from Thomas P. Henley. It is alleged that the lands in question previously belonged to Thomas F. Peters who died in September 1883, leaving a will, a copy of which is made an exhibit to the bill and reads as follows:

"I hereby make this my last will and testament. I desire my friend, James W. Sloss, of Birmingham, Alabama, to take charge of all of my interests in Birmingham, Alabama, and sell the same to the best advantage and pay all due balances, and reserve whatever balance there may be for my grandson, Tom P. Henley.

"I desire that Col. James C. Neely, of Memphis, Tenn., and General E. W. Rucker, of Birmingham, Alabama, to take charge of all my unsold coal and iron lands in the state of Alabama. I think they ought to get $400,000.00 for it. I also desire that they take charge of my interest in the Pratt Coal & Coke Company, and when they have paid all my just debts in Nashville and Memphis, Tennessee, and Birmingham, Alabama, they will turn over the balance to James W. Sloss, who I hereby appoint as guardian of my grandson, Tom P. Henley, to be managed and held for my said grandson, Tom P. Henley by said James W. Sloss as his guardian until he becomes of age; I also desire that James H. Polk, of Maury county, Tennessee, take charge of a certain tract of land about 18,000 acres in Henry county, Tennessee, which he has bought from Robert Houssel or sell the lands to the best advantage possible as he may see fit; I also will and bequest to my brother Dr. George B. Peters one-third of my estate in the Indus Mining Company of New Mexico; I also will and bequeath to my nephew George B. Peters one-third of my interest in the same; I also will and bequeath to my sister Ann Young one-third of my estate in the same; I also will and bequeath to Mary P. McElderry and Frank N. Iron, of Alabama, one-half of my entire interest in the San Francisco mine, of the state of Chihuahua, Mexico; I also will and bequeath one-fourth of my entire interest in the same to my niece, Lucy P. Cobb; the remaining one-fourth I will and bequeath to my friend Henry L. Wheeler, of Birmingham, Alabama, for his services and great fidelity to me and mine. All these bequests it is understood are not available until all my debts are paid. I further will and bequeath to William H. Woodward, of Birmingham, one-half of my entire interest in the old cap-Alquin mine in the state of Durango, Mexico. He is entitled to this by contract made several years ago between myself and him, and I request the new company to issue to him the amount in reduced stock according to the present capitalization. The remaining one-half to be divided equally between my brother George B. Peters, and my grandson Tom P. Henley.

"Finally all these in whom I have intrusted these responsibilities I request the courts will not require to give any security.

"Therefore I commit my body to the earth from whence it came trusting in the merits of my blessed Savior for my eternal salvation.

"Thomas Peters."

It is alleged that Thomas P. Henley was a grandson of said Thomas Peters, deceased, the sole heir of his estate, and beneficiary of the lands in question.

It is further alleged that the trustees and executors named in the will declined to act, and that in December, 1883, Joseph F. Johnston was appointed administrator with the will annexed, by the probate court of Jefferson county; that in July, 1884, the administration was removed into equity under a decree in the case of Johnston, Administrator, v. Pratt Coal & Iron Company; that Johnston made final settlement, and was discharged by the chancery court in January, 1885; that in January, 1901, said Johnston

filed petition in the probate court for appointment as administrator de bonis non of said estate, reciting that new assets had been discovered, that the estate was insolvent; and that the debts had not been paid; that Johnston was so appointed; that as administrator he paid off all debts; and that there is no outstanding indebtedness against the estate. It is averred that in December, 1902, Johnston filed in the chancery court a petition to reinstate the cause of Johnston, administrator, against Pratt Coal & Iron Company and to procure an order in said cause for the sale of the lands in question; that the chancery court reinstated the cause, and entered a decree for the sale of the lands; that Johnston in November, 1903, sold said lands to W. C. Shackelford for $400; and that said sale was confirmed by the chancery court. It is alleged that, prior to the filing of petition by Johnston for appointment as administrator de bonis non, he entered into an agreement with respondent Hooper, under which Hooper undertook to look up lands belonging to Thomas F. Peters at the time of his death, and report the same to Johnston, and that Johnston agreed to allow Hooper one-fourth of the proceeds derived from such lands; that Hooper reported to Johnston that said Peters had some interest in the lands in question; that Hooper entered into an agreement with W. C. Shackelford and J. K. Brockman whereby Shackelford would become the purchaser of said lands at the sale by the administrator, holding title for Hooper and Brockman, and that the proceeds should be divided, Hooper one-half, and Brockman and Shackelford each one-fourth. It is alleged that this agreement was put in writing in November, 1903, but was not recorded until January, 1913, and that the complainant did not discover said agreement until six months before the filing of his bill. It is alleged that the lands so sold by the administrator de bonis non to Shackelford were reasonably worth $30,000, which fact was known to the administrator, to Hooper, and to the purchasers, and that the amount for which the lands were sold, $400, was grossly inadequate; that Hooper, who undertook to represent the administrator de bonis non, received pay from the administrator on account of this sale, and also received one-half interest in the lands.

It is alleged that the probate court was without jurisdiction to appoint Johnston as administrator de bonis non, for the reason that the estate had already been removed into the chancery court.

The prayer is that the appointment of Johnston as administrator de bonis non and all proceedings thereunder be declared void; that the price paid by Shackelford for the lands in question be decreed grossly inadequate; that Hooper did not in good faith carry out his agreement with the adminis-

trator, but fraudulently and secretly acquired an interest in the lands; that Shackelford and Brockman participated in Hooper's breach of duty; that said sale be declared fraudulent and void; and that the decree of confirmation be set aside.

Hood & Murphree, of Gadsden, and Smith & McCary, of Birmingham, for appellant.

After final settlement of an administrator's accounts the appointment of an administrator de bonis non is void. 143 Ala. 535, 39 South. 267, 111 Am. St. Rep. 57, 5 Ann. Cas. 496; 177 Ala. 94, 58 South. 304; 57 Ala. 510. The probate court must have jurisdiction of the estate in order to appoint an administrator de bonis non. Code 1907, § 2533; Const. 1901, § 149. All knowledge of an agent belongs to his principal, and if the agent uses it for his own benefit he will become a trustee for his principal. 1 Perry on Trusts (4th Ed.) 264; Pom. Eq. § 959; 87 Ala. 27, 6 South. 284. In an action seeking relief on the ground of fraud, where the statute has created a bar, the action is not considered to have accrued until the discovery of the fraud. Code 1907, § 4852; 65 Ala. 169; 189 Ala. 31, 66 South. 672; 191 Ala. 175, 67 South. 983; 157 Ala. 258, 48 South. 397, 131 Am. St. Rep. 55.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, for appellees.

In cases of asserted fraud, the facts must be positively averred; general allegations or conclusions of law as to fraud are not allowable. 114 Ala. 630, 21 South. 534; 98 Ala. 521, 13 South. 374; 100 Ala. 296, 14 South. 573. The fact that an agent is employed in one matter will not incapacitate him for dealing with the principal in another matter. 45 Iowa, 337; 1 Mechem (2d Ed.) 908; 136 Iowa, 234, 113 N. W. 822; (Tex. Civ. App.) 111 S. W. 668; 140 Wis. 341, 122 N. W. 737; 93 Cal. 80, 28 Pac. 796, 27 Am. St. Rep. 167; 13 Ala. 681; 2 C. J. 714. Even after removal of an estate into equity, only the probate court has power to appoint an administrator de bonis non. 122 Ala. 242, 25 South. 171. Where a decree of the probate court is invalid, the proper mode of reaching the defect is by petition to the probate judge to set aside and vacate it. 82 Ala. 357, 2 South. 32; 182 Ala. 376, 62 South. 706; 151 Cal. 318, 86 Pac. 183, 90 Pac. 711, 121 Am. St. Rep. 105; 15 R. C. L. 868. The suit is barred by the statute and by laches. Code 1907, § 4852; 142 Ala. 633, 38 South. 797, 4 Ann. Cas. 559; 158 Ala. 318, 48 South. 507, 132 Am. St. Rep. 29; 106 Ala. 418, 17 South. 623; 91 Ala. 467, 8 South. 404; 55 Ala. 525; 86 Ala. 173, 5 South. 440.

THOMAS, J. The trial court sustained demurrers to the bill, and complainant appeals.

[1] The duties and powers conferred by the will of Thomas Peters, deceased, upon James C. Neely and E. W. Rucker were not personal, and were exercisable by the administrator de bonis non cum testamento annexo, and passed to such representative the properties in question for the purposes of administration—to pay "all my [testator's] just debts in Nashville and Memphis, Tennessee, and Birmingham, Alabama"—and the balance of the proceeds was required by the will to be turned over to James W. Sloss, as guardian of Tom P. Henley, Pearce v. Pearce, 199 Ala. 491, 74 South. 952; Ralls v. Johnson, 200 Ala. 178, 75 South. 926; Jemison v. Brasher, 202 Ala. 578, 81 South. 80. It may be that when the several provisions of Mr. Peters' will are considered together for ascertainment from that instrument of testator's intent, by the rule of equitable conversion the lands are treated as personal property, and should have been administered as such. Goodwyn v. Cassels (Ala. Sup.) 93 South. 405; [1] Henley v. Rucker (Ala. Sup.) 93 South. 879; [2] Hibler v. Oliver, 193 Ala. 369, 69 South. 477. However this may be, the bill alleges that the trustees did not accept the trust; and the construction of the will in this respect was before the court in Rucker v. T. C. I. & R. Co., 176 Ala. 456, 465, 58 South. 465; Cruikshank v. Luttrell, 67 Ala. 318.

[2, 3] The bill does not aver that Hooper assumed any obligation to the administrator, Johnston, except to "look up" lands belonging to the Peters estate at the time of the death of testator and report to him the result of his investigation. This was fully done so far as this pleading discloses. The former relation as such agent did not preclude Hooper from thereafter acquiring an interest in the lands of that estate at administrator's public sale, in the absence of averment that Hooper fraudulently concealed from his principal any material fact as to same, or that he did not fully and faithfully discharge his duties in that behalf in relation to the subject and object of the employment and according to the terms thereof. The averments of the bill fail to show other relation on the part of respondents Shackelford and Brockman than that of ordinary purchasers of property at judicial sale, at which they were the highest and best bidders. Nor is it averred that Hooper, Shackelford, or Brockman entered into an agreement for acquiring the lands at the time of the existence of the relation of agency between Hooper and the administrator of said estate. Of this counsel for appellant urge that Hooper did not inform Johnston of the extent or nature of the title that Peters had to said land, but caused Johnston to believe that the title was not sufficient, and therefore the interest in the land was of little value. This conclusion

of counsel is not supported by the averment of fact contained in the bill. And in cases of asserted fraud, in pleadings at law or in equity (by way of right of action or defense) the facts must be positively averred from which the court can see that fraud has intervened. For this reason, general allegations and conclusions of law as to fraud are held insufficient. Loucheim & Co. v. First Nat. Bank, 98 Ala. 521, 13 South. 374; Reynolds v. Excelsior Coal Co., 100 Ala. 296, 14 South. 573; McDonald v. Pearson, 114 Ala. 630, 21 South. 534; Cannon v. B. T. & S. Co., 194 Ala. 469, 69 South. 934; Olson v. Olson, 200 Ala. 56, 75 South. 313; Elba Bank & Trust Co. v. Marsh, 202 Ala. 401, 80 South. 374; McCreery v. Berney Nat. Bank, 116 Ala. 224, 22 South. 577, 67 Am. St. Rep. 105; Henley v. Rucker, ante, p. 165, 93 South. 879.

[4] It will not be necessary to multiply authority in support of the general rule that after one has performed his office as agent, or has in good faith severed his relation as agent, he is free to negotiate for his own interest and can act "adversely to his former principal as fully as any other person." McKinley v. Irvine, 13 Ala. 681; Clay v. Cummins, 201 Ala. 34, 77 South. 328; 2 C. J. 714. The purpose of the cases touching the relation of principal and agent is to secure fidelity in the agent, and as a means to this end the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal. The infallible truth that "a man cannot serve two masters" is the reason for the tests found in the several statements of the rule governing agency. Tisdale v. Tisdale, 2 Sneed (Tenn.) 596, 64 Am. Dec. 775; Porter v. Woodruff, 36 N. J. Eq. 174.

[5] The demurrer takes the point that the bill fails to allege that at the time of the purchase of the land by Shackelford at "public outcry"—though purchased in the interest of himself, Hooper and Brockman—Hooper's relation of agency to the estate or to the personal representative had not terminated, or that Hooper had not in good faith discharged his duty and severed his relation as agent, and that such fact was not fully known to the administrator before and at the time of the sale.

Appellant's counsel seek to avoid the application of the rule by asserting that in purchasing the land or interest therein from Shackelford and others Hooper was availing himself of knowledge obtained during the period of his agency, as to the nature, extent, and value of the land. As to this, the bill does not aver that any knowledge Hooper so obtained in any sense actuated or resulted in the purchase of the lands, or in any way affected the public sale thereof. It is averred that Shackelford and Brockman were "desirous of purchasing the lands" belonging to

---

[1] 207 Ala. 482.    [2] Ante, p. 165.

Peters at the time of his death, and that Shackelford was the actual purchaser; and there is a failure of averment that any information or knowledge of Hooper, acquired during the discharge of his duties as agent or the continuance of that relation, resulted in Shackelford's becoming the purchaser of the lands at its public sale and obtaining a deed therefor, or that it depreciated such sale. There is a lack of averment in the bill that through any intervention or information of Hooper, as a result of the latter's knowledge as agent, etc., or by reason of the suppression of facts or of his failure of full disclosure to his principal, the sale to Shackelford resulted. Such are the deficiencies to be found in paragraphs 7 and 8 of the bill containing the charge of malfeasance against Hooper, which are held on demurrer insufficient in law.

Observation was made in Henley v. Rucker, supra, of the bill touching one phase of the question that the respondents acquired all property that he got from the estate through decrees of the chancery court, and seeks to impeach said decrees by charging, in general terms, a fraudulent collusion with the administrator in the procurement of same, and that general charges of fraud, conclusions of the pleader, cannot be considered sufficient upon demurrer to the bill; and that it was at least questionable if the bill, with the defects cured by proper amendment, "would square to the rule as set out in the decisions of this court." De Soto Co. v. Hill, 194 Ala. 537, 69 South. 948; Hogan v. Scott, 186 Ala. 310, 65 South. 209; Hardeman v. Donaghey, 170 Ala. 362, 54 South. 172.

Some of the questions now urged by way of attack upon the validity of proceedings in the chancery court were determined in Rucker v. T. C. I. & R. Co., supra, where it was held that an attack, in essential contentions as made here with reference to the title to lands of same estate, was collateral in nature and could not be sustained.

The decree of January 23, 1895, after passing the accounts of the administrator, recites in conclusion that the "said Johnston's resignation be, and the same is hereby, accepted, and the said Johnston be, and he is hereby discharged from the said trust and from any further liability to account for his acts in respect to said administration."

In one of the several litigations that have been prosecuted on this decree or involving this action in the probate and chancery courts (Henley v. Johnston, 134 Ala. 646, 650, 32 South. 1009, 1010, 92 Am. St. Rep. 48) —the matter of the instant petition for letters of administration de bonis non—it is recited:

"It is shown that the petitioner had been former administrator and had performed the duties of said administration, his final accounts being audited, stated and approved on about the 12th day of February, 1894, and that there are assets belonging to said estate unadministered, that the estate is insolvent and that the debts have never been paid in full."

Of this the court said:

"It is not shown by the averments of this petition or otherwise whether the petitioner as former administrator had been discharged by an order from his office as administrator. If he had, the fact that he made a final settlement and was discharged is entirely consistent with the presumption that he did so after resigning or his removal for cause from office. If he was not discharged by an order, then the order appointing him administrator de bonis non and his act of qualifying as such amounted to a relinquishment or resignation of his former letters. Turner v. Wilkins, 56 Ala. 173. So, then, in either aspect, the grant of letters is not void; and as administrator de bonis non he is the proper person to make application for the sale of the lands of the decedent to pay the debts of the estate."

[6] The fact of removal of the administration of the Peters estate into the chancery court, its settlement and final decree there, did not prevent the probate court later, on discovery of unadministered assets and properties of that estate, from appointing an administrator de bonis non (Lunsford v. Lunsford, 122 Ala. 242, 25 South. 171), and operated as a removal of such unadministered estate into the chancery court which, theretofore taking jurisdiction, had administered the known assets of the estate. Ex parte John, 122 Ala. 665, 666, 25 South. 1025.

[7] Passing to the other phase of demurrer to the bill, it will be noted that the administrator's deed to Shackelford, pursuant to the decree of sale in the chancery court, was of date 1903, about 18 years before the bill was filed. The statute of limitations that will be considered is that of 10 years; and the provisions of section 4852 of the Code are:

"In actions seeking relief on the ground of fraud where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the facts constituting the fraud, after which he must have one year within which to prosecute his suit."

One of the amendments avers generally that neither the complainant nor any of the preceding grantors in the complainant's chain of title "had knowledge or notice of the contract of John DeB. Hooper with W. C. Shackelford and J. K. Brockman, * * * and knew no facts which would put him on inquiry thereof at the time he conveyed his interest therein as herein stated." This is insufficient. It was not the contract itself that constituted a fraud of complainant's rights (if such was committed), but the fact that Hooper, while the agent of the administrator, became interested in his in-

dividual capacity in the lands and their purchase with Shackelford and Brockman. The bill does not allege that the complainant or some of its predecessors did not know of the fact of Hooper's interest in the lands before the bill was filed and within the bar of the foregoing statute. In Rucker v. T. C. I. & R. Co., 176 Ala. 456, 58 South. 465, it appeared that Hooper had been interested in the purchase of these lands (as well as other lands) in which the estate of Thomas Peters was interested. In view of the litigation over the estate of Thomas Peters that has reached this court (Rucker v. T. C. I. & R. Co., supra; Henley v. Johnston, 134 Ala. 646, 32 South. 1009, 92 Am. St. Rep. 48), it could have hardly been averred that Thomas P. Henley, a stockholder in appellant's corporation, and litigant in this court and courts below over the Peters estate, was devoid of notice or knowledge of the interest of Hooper in the lands, of which interest it is sought to be made the basis of the instant bill. It is true these two cases did not disclose that Hooper had at any time acquired an interest in the land from Shackelford, yet the first of the litigations showed that Rucker and Henley were put upon notice of the exact status of the title to the lands, and the presumption was that they followed all sources of knowledge or notice to the end of a full understanding thereof. The complainant company did not receive a deed to the lands until 1920, or thereabouts, although the agreement in question between Hooper, Shackelford, and Brockman was placed on record in Walker county in the year 1913, where a large proportion of the lands was situated; and during the period that Rucker was engaged in litigation with the Tennessee Coal, Iron & Railroad Company, as to the Peters lands. It is not to be supposed that he, as one of the complainant's predecessors in title, was not aware of the existence of the interests of Hooper, Brockman, and Shackelford in the lands. Moreover, appellant is claiming title by mesne conveyances from and through Rucker and Neely, the two men who were named as trustees in the will of Thomas Peters, and the heirs of Neely are averred in the bill itself to be stockholders in the appellant company.

[8, 9] The statute referred to does not require actual notice, since a fraud is discovered within the contemplation of the law when it is readily discoverable or when a party is put upon notice thereof. Ivy v. Hood, 202 Ala. 121, 79 South. 587; Veitch v. Woodward Iron Co., 200 Ala. 358, 76 South. 124; authorities collected in Gill v. More, 200 Ala. 511, 520, 76 South. 453; Gamble v. Black Warrior Coal Co., 172 Ala. 669, 55 South. 190; Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807. And it is established that a deed or other conveyance of land in this state becomes effective as constructive notice from the moment of recordation. Chapman v. Johnson, 142 Ala. 633, 38 South. 797, 4 Ann. Cas. 559.

[10] The provisions of Code, § 4852, are construed to mean that mere ignorance on the part of the alleged defrauded party is not sufficient to prevent the running of the statute, but to mean ignorance that is superinduced by the fraud of the respondent in the form of active concealment, conduct calculated to mislead, or to prevent inquiry and lull into repose. Ivy v. Hood, supra; Van Ingin v. Duffin, 158 Ala. 318, 48 South. 507, 132 Am. St. Rep. 29. It is not averred that any such act, conduct, or guilty silence was employed or intervened in this case to defeat the operation of the statute. The following language from the leading case on this question (Tillison v. Ewing, 91 Ala. 467, 8 South. 404) is conclusive:

"It appears from the evidence that plaintiffs were not informed of the issuance of a patent to the lands until March, 1887, about six months before the commencement of the suit. The patent was issued June 1, 1845, to William S. Tillison, one of the plaintiffs, and his brother, Frank M. Tillison, who died December 29, 1845, the plaintiffs deriving title to his interest as his heirs. The fact constituting the fraud is alleged to consist in the fraudulent concealment of the patent by Hollingsworth, of which it is claimed defendant had knowledge, and in which he participated or connived.

"Section 2630 being a statutory affirmation and application to legal remedies of the rule which previously prevailed in equity, where fraud had been concealed by a party against whom a cause of action existed, with the mere modification that the suit shall be prosecuted within a specified and limited time after discovery of the facts constituting the fraud, a proper construction of the statute requires that the character of the fraud sufficient in such cases shall be determined on the same principles applicable and established under the rule in equity. Accordingly, in Underhill v. Mo. Life Ins. Co., 67 Ala. 45, it is said: 'Ignorance of right, there being no more than mere passiveness, mere silence, on the part of his adversary, cannot be ingrafted as an exception on the statute of limitations, without a destruction of its wise policy, and without an encouragement of mere negligence.' The ignorance must be superinduced by the fraud of defendant. In the absence of a fiduciary relation between the parties, imposing the moral and legal duty to disclose, there must be some act or conduct calculated to mislead, or deceive, or to lull inquiry. Porter v. Smith, 65 Ala. 169; Holt v. Wilson, 75 Ala. 58." Duncan v. Watson, 198 Ala. 180, 73 South. 448; Corona Coal & Iron Co. v. Amerson, 201 Ala. 3, 75 South. 289; Veitch v. Woodward Iron Co., supra; Sims v. Riggins, 201 Ala. 99, 77 South. 393.

[11] When a party relies on his ignorance of facts material to his right as an excuse for his laches and delay in asserting them, he must show by distinct averments why he

was so long ignorant, and acquit himself of all knowledge of facts which would put him on inquiry, and must show how and when he first acquired a knowledge of the facts. James v. James, 55 Ala. 525. This principle was announced in Scruggs v. Decatur Mineral & Land Co., 86 Ala. 173, 5 South. 440, thus:

"Laches will not be imputed, until after discovery of their rights. But mere ignorance of right, without excusing or explaining its reasonable continuance, is insufficient. 'Ignorance of right in the party complaining, there being no more than passiveness, mere silence on the part of his adversary, cannot be ingrafted as an exception on the statute of limitations, without a destruction of its wise policy, and without an encouragement of a mere negligence.' Underhill v. Mo. Fire Dept., 67 Ala. 45; James v. James, supra. When the case stated is prima facie within the bar of the statute, or offensive to the rule against the enforcement of stale demands, the complainant must positively and distinctly aver the facts and circumstances which constitute an exception to the statute, or which excuse or explain the long acquiescence and delay. Phillippi v. Phillippi, 61 Ala. 41."

[12] It may be noted that—

"The statute of limitations may be set up in equity by demurrer where the bill shows that the cause of action stated in the bill is prima facie within the bar of limitations or offensive to the rules which courts of equity adopt for the discouragement of stale demands." Henley v. Rucker (Ala. Sup.) 93 South. 879;[3] Veitch v. Woodward Iron Co., supra; Van Ingin v. Duffin, supra; Lovelace v. Hutchinson, 106 Ala. 417, 17 South. 623.

[13] In the present bill there is no adequate excuse to explain the long acquiescence and delay; the bill merely avers ignorance of the existence of the rights of Hooper, Brockman, and Shackelford in the lands. It is settled that if a corresponding legal right is barred by the statute of limitations, an equitable action is likewise barred by laches, unless special circumstances obviating the period of limitation are distinctly averred and proven. Gayle v. Pennington, 185 Ala. 53, 64 South. 572.

[14, 15] When a suit is brought within the analogous time of the statute of limitations, defendant must show laches, but when brought after the statutory time, complainant must plead and prove that laches does not exist. Woodlawn Realty Co. v. Hawkins, 186 Ala. 234, 65 South. 183. So, where a sale of land made by the register under decree of the chancery court was rendered voidable by irregular proceedings, a bill by a junior incumbrancer to have such a sale set aside, filed nine years after the sale, and more than eight years after the proceedings, no sufficient excuse being shown for the delay, is demurrable as a stale demand. Abernathy v. Moses, 73 Ala. 381, 384.

We may observe that it is not averred that complainant or its predecessors in title ever paid taxes or actively asserted any right or interest in the lands prior to filing the bill. We are of opinion that the demurrer was properly sustained.

The decree is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.